**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**


Darron Francis,                           :
                                          :
              Plaintiff,                   :
                                          :
       v.                                 :        CIVIL ACTION NO.
                                          :        1:08-cv-02775-JOF
The Hertz Corporation,                    :
                                          :
              Defendant.                   :
                                          :


## OPINION & ORDER


This matter is before the court on Defendant's motion for summary judgment [30].

## I.    Background

### A.    Procedural History and Facts

Plaintiff, Darron Francis, filed suit against Defendant, The Hertz Corporation, on July 22, 2008, in the State Court of Gwinnett County, raising claims of malicious prosecution and intentional infliction of emotional distress arising out of a dispute with the rental car company for failure to return a car. Defendant removed the case to this court on September

3, 2008.[1]  After a period of discovery, Defendant filed the instant motion for summary

judgment.

Some time in late December 2004 or January 2005, Plaintiff began renting cars from

Hertz for his use in getting to and from work.[2]  Plaintiff would rent cars for a period of one

or two weeks and then extend the rentals.[3]  Plaintiff apparently preferred this method

because he could make weekly payments.  If he rented the car for a month or more, Hertz

required an up front payment of two months rental, which Plaintiff could not manage

financially.  *See* Francis Depo., at 63-64.  Plaintiff testified that he was able to do this

because he was on a good customer service relationship with the employees at the Hertz

---

[1]The court notes Plaintiff had previously filed a complaint against Hertz in an action
styled as *Francis v. The Hertz Company*, Civil Action No. 07-CV-266-JOF.  On February
29, 2008, the court dismissed that case for failure to prosecute.

[2]Both Plaintiff and Defendant submitted material statements of fact.  The court draws
these facts from those that are undisputed material facts between the parties.  The court notes
that with respect to its response to certain of Plaintiff's statement of material facts,
Defendant simply states "denied" or "denied" with explanation.  Defendant, however, does
not provide a citation for these denials.  This does not conform to the practice outlined in
this court's Local Rule 56.1(B)(3).

[3]Plaintiff asserts that these rental periods were as follows: December 17, 2004
through December 23, 2004; December 23, 2004 through December 28, 2004; December
31, 2004 through January 7, 2005; January 7, 2005 through March 5, 2005; April 22, 2005
through May 20, 2005; and May 20, 2005 through May 27, 2005.  This information would
appear to comport with Plaintiff's Exhibit 1 used by the parties in numerous depositions and
affidavits.  Defendant does not dispute these dates, but rather asserts that the only relevant
transaction is the May 20, 2005 through May 27, 2005 transaction.

Beaver Ruin location where he always rented. *Id.* at 64. During the course of the rental relationship, Plaintiff paid Hertz $4,300 for the rentals.

The car Plaintiff rented was a blue 2005 Mazda 6D. A new rental period between Hertz and Plaintiff began on May 20, 2005 and was for a one week period. *See* Edelen Aff., ¶ 3 & Exh. 1. At the time of May 20, 2005, the relevant contact information Hertz had for Plaintiff is reflected on Exhibit 1 to Mr. Edelen's affidavit. Exhibit 1 shows Plaintiff as a member of the #1 priority club because he was a previous rental customer. It also lists Plaintiff's address as 3537 P'tree Corner Cir #A, Norcross, GA 30092. Plaintiff's home phone number is shown as 404-587-5915. *Id.* Under the category of CDP/Rate/Mileage, this document also reflects "US Postal Service." *Id.* There is, however, no separate contact number listed for Plaintiff's work. It appears that the US Postal Service listing entitled Plaintiff to a 5% government discount.

During the course of discovery, other documents were produced from Hertz's corporate headquarters in Oklahoma City, Oklahoma. A document run on March 6, 2005, shows the same contact information for Plaintiff, but lists his company as "US Govt". *See* Exhibit 1, at 000002. On May 21, 2005, the same contact information is found with a company name of "Government Employee Bene." *Id.* at 000003. On August 3, 2005, the same contact information is listed with a company of "US Postal Service." *Id.* at 000004. On December 24, 2004, Plaintiff's address is the same, but the contact telephone number is

770-441-4113. His company is listed as "US Govt." *Id.* at 000005. January 1, 2005, has the same address, but a telephone number of 404-587-5915 and "US Postal Service." *Id.* at 000006. January 8, 2005, has the same address, but 770-441-4113 for telephone contact and "United States Postal Service." *Id.* at 000007.

When the car was not returned by May 31, 2005, Hertz's computer system flagged the car as overdue and on June 1, 2005, a computer-generated letter was sent to Plaintiff at the address on file requesting that the car be returned. That address was 3537 Peachtree Corner Circle, Apartment A, Norcross, Georgia 30092. Plaintiff's testimony reveals that although he lived at the address as of January 2005 when he may have started his rental relationships with Hertz, he moved out shortly thereafter when he could no longer pay rent. *See* Francis Depo., at 50; *see also* Reply, Exh. A (court records showing Horizon Homes & Properties seeking judgment against Plaintiff for past due rent).

However, it is far from clear that Plaintiff's testimony on this point is accurate. Plaintiff's former landlord, Horizon Homes & Properties, Inc., served him with a complaint for past due rent in September 2004 at 6320 Holcomb Way #D, Norcross, Georgia 30092. *See* Reply, Exh. A, at 2 (sheriff's affidavit of service). Further, Plaintiff did submit change of address forms with his employer showing that in July 2004, Plaintiff lived at 6320 Holcomb Way, Apartment D, Norcross, Georgia 30092. *See* Reply, Exh. B. His postal employment records also show that he changed address in February 2005 to P.O. Box

920421, Norcross, Georgia. *Id.* As of April 22, 2005, Plaintiff submitted a change of address to 2323 Northwoods Lake Court, Duluth, Georgia, 30096. *Id.* In June 2005, Plaintiff again moved to 4091 Brookside Manor Drive, Tucker, Georgia 30084. *Id.* Other records demonstrate that during this time period, Plaintiff lived at the Hometown Inn in Norcross, Georgia from January 20, 2005, through June 15, 2005. *See* Reply, Exh. C. In contrast, Plaintiff testified in his deposition that by April 22, 2005, he was living at 200 Northville Street in Norcross. *See* Francis Depo., at 51. His cell phone number was 678-557-3742. *Id.* At that time, Plaintiff still had the 591[5] cell phone, but it was a pre-paid number he would only use when he could afford to make payments. *Id.* at 51-52.

On June 2, 2005, Hertz employee Tori Nelson in Oklahoma City attempted to contact Plaintiff at the 404-587-5915 phone number listed on his account. She left a message on the answering machine that picked up directing Francis to contact Hertz. Ms. Nelson then referred the matter to her supervisor, Philip Edelen. Mr. Edelen reviewed the file on June 12, 2005, and also called the 404-587-5915 number listed on the rental contract. Mr. Edelen also left a message. Mr. Edelen then faxed a repossession order to Pro-Adjustment Services requesting that the automobile be repossessed from Plaintiff. That order provided the Peachtree Corner Circle address that Plaintiff had listed for Hertz. Plaintiff, however, no longer lived at that address.

AO 72A
(Rev.8/82)

In early July 2005, the June 1, 2005, letter Hertz had sent asking for the return of the car was returned as address unknown no forwarding information. On July 20, 2005, Mr. Edelen again called the telephone number provided by Plaintiff. He checked the phone cross reference system and did not find any additional telephone numbers for Plaintiff. The same day, Mr. Edelen contacted the Atlanta Postal Credit Union but could not get a current address or telephone number from them for Plaintiff. Mr. Edelen then began to prepare a conversion package for Quinton Burns, Hertz's Security Supervisor in Atlanta to present to the Gwinnett County Police Department to report the vehicle as missing. On July 26, 2005, Mr. Edelen directed Karon Winkler in Hertz's Fraud Unit to try to obtain contact information for Plaintiff via his Visa account. Ms. Winkler did reach a contact at Visa, but could not obtain any information. The same day, Ms. Winkler tried to reach Plaintiff again at the listed telephone number and left a message. Later in the day, Hertz employee Amy Meyer received a call from "Ms. Buffett" who said the telephone number belonged to her and that Darron Francis did not reside at the number.

Hertz determined at that point to report the car as stolen. Mr. Burns obtained an affidavit from Marvin Macena, the Hertz Beaver Ruin location employee who rented the vehicle to Plaintiff on May 20, 2005. Mr. Burns presented this information to the Gwinnett County Police Department and filed a report with Officer R. Thornton. At the time the vehicle was reported as stolen, Hertz's policy required that the Rental Agreement be closed

6

out on Hertz's computer system. At that point, Hertz attempted to collect the pending rental fees. Thus, on August 3, 2005, Plaintiff's Credit Union account was charged $1,690.17 payable to Hertz Corporation for rental fees from May 20, 2005 through August 1, 2005.

Plaintiff testified that he was aware Hertz had charged his account $1,690.17 and believed that this payment authorized his continued use of the car. Plaintiff further testified that it was his habit to return to the Beaver Ruin location to extend the rental of the car. Once there, he would use the phone to call the Hertz 1-800 number. *See* Francis Depo., at 45, 64. Plaintiff asserts that he attempted to communicate with Hertz after May 27, 2005, to extend the rental. *See* Francis Depo., at 57-60 (testifying that after April 22, he extended the rental numerous times over the phone, but cannot recall when or how many times). Hertz, however, has no record of these communications. *See* Edelen Aff., ¶¶ 14-18; Macena Aff., ¶ 4.[4]

---

[4]Plaintiff disputes Defendant's material statement of fact that no records of the communications exist. *See* Plaintiff's Resp., ¶ 17. Plaintiff states that certain Hertz witnesses testified that such documents would be "difficult to produce" not that they did not exist. *Id.* Further, Plaintiff asserts, Hertz did not produce any documents to show Plaintiff had made payments even though Plaintiff rented a car six times from Hertz between December 17, 2004 and May 20, 2005. *Id.* Plaintiff implies in its response that these documents – and others – do exist and Hertz had not produced them.

The court notes that Plaintiff has not filed a motion to compel in this case and has not otherwise raised with the court an allegation of deficiencies with Hertz's production in this litigation. Nor has Plaintiff filed a Rule 56(f) motion seeking a continuance on the basis of insufficient discovery. The court will not address complaints about discovery listed in a response to a material statement of fact and does not view such complaints – outside the context of the motions practice available to Plaintiff to address such issues – as sufficient to "dispute" a material statement of fact.

Factually significant to the case is how much information Hertz had of Plaintiff's whereabouts or contact information at the time Hertz decided to report the car as stolen. Plaintiff testified that at the time of rental, he gave Hertz his home address, employer information, and a work phone number which went to his supervisor's phone. *See* Francis Depo., at 37. Plaintiff also testified that representatives of Hertz contacted him at his work location in the past, so he believed they should have been able to do so after May 27, 2005. *Id.* Plaintiff also points to Hertz's rental records which indicate that Plaintiff was a postal employee. Mr. Macena testified that at rental, Hertz prefers to have two working phone numbers, a work phone and a home phone. *See* Macena Depo., at 10-11.

The only other evidence Plaintiff has that he provided Hertz with his work telephone number is the affidavit of Detective Bridgefarmer of the Gwinnett County Police Department. Plaintiff cites paragraphs 15, and 18-19 of his affidavit to support his contention that Hertz had his work telephone number. However, Detective Bridgefarmer's affidavit at Paragraph 15 only discusses the report Detective Bridgefarmer made to Hertz representative Mr. Smith. *See* Bridgefarmer Aff., ¶ 15. He does state that Plaintiff's friend, Dorothy Simmon, told the judge at the preliminary hearing that Plaintiff gave Hertz his work location and a work telephone number when he rented the car. *Id.*, ¶ 17. However, in her deposition, Ms. Simmon stated that she did not know what address or telephone number Plaintiff gave to Hertz. *See* Simmon Depo., at 41. She did testify that Plaintiff's cell phone

AO 72A
(Rev.8/82)

was stolen at some point and he had called Hertz to update them with a new cell phone number. *Id.* at 47. Plaintiff, however, testified that he never lost his cell phone. *See* Francis Depo., at 107. Detective Bridgefarmer's affidavit also reports that the prosecutor stated he was dismissing the charges because Hertz should have listed the employer information and telephone number in the police report they filed. *See* Bridgefarmer Aff., ¶ 18. Detective Bridgefarmer further states that he spoke with Jerry Smith on September 12, 2005 after the case was dismissed and Mr. Smith told him that the Hertz system did show Plaintiff working for the Postal Service and did show a business telephone number. *Id.*, ¶ 19. Mr. Smith, however, testified that he did not recall talking to Detective Bridgefarmer about this. *See* Smith Depo., at 48. He testified that there was a discount code for the United States Government, but no indication that Plaintiff was employed by the Post Office. *Id.* Further, Mr. Smith disagreed that Hertz ever had a work contact number for Plaintiff. *Id.* No work number is listed on any of the rental documents.

Detective Bridgefarmer states that prior to arresting Plaintiff, he interviewed Hertz Beaver Ruin location employee Marvin Macena on August 18, 2005. Mr. Macena told Detective Bridgefarmer that Plaintiff had made three renewals on the rental contract and that he thought Plaintiff worked for the Postal Service. *See* Bridgefarmer Aff., ¶ 8. Detective Bridgefarmer then contacted United States Postal Inspector Gorby who verified Plaintiff's employment and gave his location as the Old Milton Highway branch in Alpharetta. *Id.*, ¶

9. After verifying that postal employees had seen Plaintiff driving the 2005 Mazda 6, Detective Bridgefarmer obtained a felony warrant for theft by taking. *Id.*, ¶ 10.

Detective Bridgefarmer obtained a felony warrant for Plaintiff's arrest on August 26, 2005, and effectuated the arrest on August 29, 2005. Plaintiff was incarcerated until the preliminary hearing on September 6, 2005. A transcript of the preliminary hearing shows that Ms. Simmon appeared on behalf of Plaintiff and made representations to the court and the prosecutor. The judge did note that the charges made on Plaintiff's credit card may have solved the rental fee problem, but the car, itself, still had remained outstanding; however, the prosecutor declined to go forward with the charges. *See* Transcript, at 3-4 (Judge: "But if it's theft by taking, it wouldn't be just non-payment. He had the car."). At the hearing, Ms. Simmon said that Plaintiff was calling monthly to extend the rental. *Id.* at 4. She also stated that Plaintiff provided "accurate information on his application . . . and that he did call the company, both to extend the rental agreement as well as to go into the company . . . with her to change the contact information. His cell phone was stolen. He went back to Hertz to change that cell phone information." *Id.* at 4-5.

Ms. Simmon's deposition testimony, however, was notably different. There, she testified that she had very little contact with Plaintiff in 2005. *See* Simmon Depo., at 14. She did go with Plaintiff twice to renew the car rental, but she did not listen to his conversations to know what telephone number or address Plaintiff gave to Hertz. *Id.* at 18-

10

20, 41. Although she testified that Plaintiff's cell phone was stolen and he had updated his number with Hertz, she testified that she never told the police that. *Id.* at 47-48. Simmon also stated that she never talked with Detective Bridgefarmer and never told him that the Hertz application contained Plaintiff's correct employment and work telephone number. *Id.* at 75.

Plaintiff testified that the arrest and his incarceration caused him to lose his job with the Post Office for a year, resulted in alienation from his co-workers and family, and slandered his name. Defendant presented evidence, however, that in October 2005, Plaintiff was investigated by the postal service for falsification of his employment application form for failure to include prior arrests on the application. *See* Reply, Exh. F. The investigation recommended termination. *Id.* Defendant suggests this is why Plaintiff was out of work for a year.

**B.     Contentions**

Defendant argues that Plaintiff's claim for intentional infliction of emotional distress fails because Defendant's conduct was not extreme and outrageous, and Plaintiff did not suffer severe emotional distress. Plaintiff responds that Hertz's failure to fully inform the police of the information within its control at the time the company sought an arrest warrant and Hertz's failure to abandon the warrant after it received payment for the pending rental fees is extreme and outrageous.

Defendant contends that there is no evidence that Hertz instituted the prosecution against Plaintiff maliciously or without probable cause. Therefore, Hertz avers, the court should grant summary judgment on Plaintiff's malicious prosecution claim. Plaintiff responds that malice may be inferred from complete lack of probable cause and that had Defendant attempted to contact him at work, he could have resolved the issue. Further, had Defendant provided full information to the police, such as Plaintiff's location of employment and the fact that Hertz had charged the rental fees to his Visa debit card, he would not have been arrested.

## II.    Discussion

### A.    Intentional Infliction of Emotional Distress

In Georgia, to succeed on a claim of intentional infliction of emotional distress, Plaintiff must prove (1) intentional or reckless conduct; (2) extreme and outrageous conduct; (3) a causal connection between the wrongful conduct and the emotional distress; and (4) severe emotional distress. *See Phinazee v. Interstate Nationalease, Inc.*, 237 Ga. App. 39, 39-40 (1999). Whether the conduct alleged is egregious enough to sustain a claim of intentional infliction of emotional distress is a question of law. *Id.* Georgia courts have determined that:

> [i]t has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another

12

tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Id.* (citations and quotations omitted). In *Jarrard v. United Parcel Service, Inc.*, 242 Ga. App. 58, 62 (2000), where an employer gave an employee a harsh performance evaluation on the day the employee returned from extended psychiatric care and continued the evaluation despite the employee's tearful requests for postponement, the court of appeals did not find outrageous conduct, despite the fact that plaintiff alleged malicious motivation of the employer because of the employee's prior complaints about transfers. *Id.* at 148. *See also Miraliakbari v. Pennicooke*, 254 Ga. App. 156 (2002) (no intentional infliction of emotional distress where employer ordered plaintiff to remain at work after plaintiff learned that her son had been injured at school, employer refused to let employee call school to ask about son's injuries, pulled plug on the phone when the employee attempted to call the school, threatened employee that she would be fired if she left work, and ordered employee to stop crying and return to work); *Fox v. Ravinia Club, Inc.*, 202 Ga. App. 260 (1991) (finding no outrageous conduct where plaintiff's supervisor spoke to her in a "hostile, intimidating and abusive manner" and gave her false reasons for termination).

Plaintiff cites *Wal-Mart, Inc. v. Johnson*, 249 Ga. App. 84 (2001), *overruled on other grounds*, *Ferrell v. Mikula*, 295 Ga. App. 326 (2008) and *K-Mart Corp. v. Lovett*, 241 Ga. App. 26 (1999), *abrogated on other grounds by Golden Peanut Co. v. Bass*, 249 Ga. App.

13

224 (2001), in opposition to Defendant's motion for summary judgment on the intentional infliction claim. In *Johnson*, the plaintiff, a 54-year-old black female, was forcibly detained by store employees investigating shoplifting. However, the plaintiff was never suspected of shoplifting and an employee inside the store radioed to another employee to "stop the next black woman" coming out of the store without any further age or description identification. Johnson was forcibly detained by a security officer in a stress hold until police arrived and put her in handcuffs. The security officer placed Johnson under "citizen's arrest" without following proper procedure for such an event. The responding police officer cited Johnson for creating a disturbance and Wal-Mart pursued the incident three months later.

The court found that the trial court did not err in denying Defendant's motion for a directed verdict as to the intentional infliction claim because Wal-Mart personnel physically detained Johnson solely because she was a black female. *Id.* at 87. Further, despite confirming that Johnson was not suspected of shoplifting, Wal-Mart prosecuted Johnson. *Id.*

The court finds this case easily distinguishable. As an initial matter, *Johnson* reviews a jury verdict. Furthermore, here, there is no dispute that Plaintiff did not pay any money for the rental of the car after May 27, 2005, until Hertz reported the car as stolen and debited Plaintiff's account. There is also no dispute that Plaintiff did not live at the address he originally provided to Hertz and did not provide any forwarding information when he left

14

that address. There is no dispute that Hertz took several actions in an attempt to locate Plaintiff and determine the status of the car prior to seeking Plaintiff's arrest. The real crux of the matter is whether Hertz should have undertaken greater actions, such as attempting to contact Plaintiff at his place of employment. While that question may make the malicious prosecution question a closer call, it does not render Defendant's actions in this situation extreme or outrageous. No one denies this incident is unfortunate, but Plaintiff has proffered no evidence to demonstrate that it is a situation so extreme or outrageous that Defendant should be liable under a theory of intentional infliction of emotional distress.

Similarly, the court does not find *Lovett* to be persuasive. In *Lovett*, the plaintiff was shopping with three other acquaintances. At one point in the trip, she was shopping independently when another person in her party came running up to her and pulled her out of the store. A Wal-Mart security officer followed the two outside and attempted to recover stolen merchandise. Lovett stated she had no concealed goods on her and opened her purse and clothes to show that she was not hiding anything. Despite not having seen Lovett shop lift any goods and not seeing any goods on Lovett's person, the Wal-Mart employee told responding police officers that she had taken Lovett and three others in custody for shoplifting. The employee signed a verification of citizen's arrest form which stated that the officer would immediately seek an arrest warrant based on the information provided by

15

the citizen. Lovett was then held in jail for twenty-four days until the court dismissed the charges against her at a preliminary hearing.

Like *Johnson*, *Lovett* reviews a jury verdict. In *Lovett*, the security officer knew that the plaintiff was not a shoplifting suspect, yet allowed the police to arrest the plaintiff for suspicion of shoplifting. She knew Lovett was not guilty of shoplifting, but never withdrew the accusation. As the court has described above, Hertz had no direct knowledge that Plaintiff had not stolen the car he rented and failed to return. Further, Hertz had attempted to contact Plaintiff before reporting the car as stolen. Hertz was not able to do so, in large part because Plaintiff had not provided accurate contact information.

For the foregoing reasons, the court finds that no reasonable jury could conclude that the facts as alleged by Plaintiff constitute intentional infliction of emotional distress as described by Georgia law. The court GRANTS Defendant's motion for summary judgment as to this claim.

## B.    Malicious Prosecution

In Georgia, the civil tort of malicious prosecution pursuant to O.C.G.A. § 51-7-40 requires a plaintiff to show: (1) prosecution for a criminal offense instigated by the Defendant; (2) without probable cause; (3) with malice; (4) under a valid warrant, accusation or summons; (5) terminated favorably to Plaintiff; and (6) causing damage to Plaintiff. *Wal-Mart Stores, Inc. v. Blackford*, 264 Ga. 612, 613 (1994). "The requisite malice may be

inferred from a total lack of probable cause. Thus, the gravamen of the complaint is the

absence of probable cause on the part of the person instituting the prosecution." *See*

*McKissick v. S.O.A., Inc.*, ____ Ga. App. ____ (2009), 2009 WL 2534496 (Aug. 20, 2009)

(quoting *Barnette v. Coastal Hematology & Oncology*, 294 Ga. App. 733, 735-36 (2008)).

"The question of probable cause is a mixed question of law and fact. Whether the

circumstances alleged to show probable cause existed is a matter of fact, to be determined

by the jury, but whether they amount to probable cause is a question of law for the court."

*Id.* at *2 (quoting *Melton v. LaCalamito*, 158 Ga. App. 820, 823 (1981)).

> Georgia law finds that:
>
> Probable cause is defined to be the existence of such facts and circumstances
> as would excite the belief in a reasonable mind, that the person charged was
> guilty of the crime for which he was prosecuted. The belief must be
> supported by appearances known to the defendant at the time he initiates the
> prosecution, and the appearances must be such as to lead a reasonable man to
> set the criminal proceeding in motion.

*McKissick*, ___ Ga. App. at ____, 2009 WL 253446, at *2 (quoting *Gooch v. Tudor*, 296 Ga.

App. 414, 418 (2009)). There is no probable cause "when the circumstances are such as to

satisfy a reasonable man that the accuser had no ground for proceeding but his desire to

injure the accused." *Id.* at *3 (quoting O.C.G.A. § 51-7-3). "No probable cause exists if a

defendant knew that the facts stated to the law enforcement official were false or if he failed

to make a fair, full, and complete statement of the facts as they existed, or if he concealed

facts." *Id.* at *3 (quoting *Horne v. J.H. Harvey Co.*, 274 Ga. App. 444, 448 (2005)).

AO 72A
(Rev.8/82)

"The defendant is not necessarily required to verify his information, where it appears to be reliable; but where a reasonable man would investigate further before beginning the prosecution [or swearing out an arrest warrant], he may be liable for failure to do so. All such factors as the reliability of the source, the availability of further information and the difficulty of obtaining it, the reputation of the accused, and his opportunity to offer an explanation, and the apparent necessity of prompt action, are to be considered in determining whether it was reasonable to act without verification." *McGonagil v. Treadwell*, 216 Ga. App. 850, 854 (1995).

Plaintiff points to *Fleming v. U-Haul Co. of Georgia*, 246 Ga. App. 681 (2000), to support his claim. In *Fleming*, the plaintiff rented a U-Haul truck one day in October 1997. At 9:00 p.m. that evening, the truck broke down on the Interstate. The plaintiff walked back to a road and used a payphone to call the 1-800 number on the rental agreement. He gave the operator his name, his location, and his contract number and was told by the operator that "someone would be there." After an hour passed, no one had arrived to help and the plaintiff again walked back to a payphone to call the 1-800 number. He was told that it would be 30-40 more minutes. After another hour passed and no help arrived, the plaintiff left the keys in the truck and hitchhiked to his home. He never returned to the rental office despite the fact that he had left a cash deposit there. U-Haul proffered no evidence to

18

dispute the plaintiff's testimony concerning the break down of the vehicle and his communications with the 1-800 number.

In February 2008, he rented another truck from U-Haul and no issue was raised about the prior rental. While he was driving the second truck, he was pulled over for failure to maintain lane. The officer told the plaintiff there was an outstanding warrant for his arrest for theft by conversion. The officer arrested the plaintiff and took him to jail where he spent 8 days before making bond. In July 1998, a grand jury indicted the plaintiff for theft by conversion for failure to return the truck in accordance with the rental agreement. The charge was dismissed in October 1998 because the truck had been recovered and U-Haul decided not to pursue charges. The *Fleming* court held that based on the facts in the case, a jury would be authorized to conclude that U-Haul had "negligently failed to ascertain the complete state of facts or recklessly failed to present them fully and fairly to the magistrate who issued the arrest warrant." 246 Ga. App. at 683-84. Based on the facts in the record, the court concluded that the trial court erred in granting U-Haul's motion for summary judgment on the malicious prosecution claim.

*Fleming*, however, is not directly on point. In that case, the plaintiff had not given any inaccurate information to U-Haul and U-Haul did not contest that the plaintiff had ever called the 1-800 number to report the truck as broken down. Further, there was no evidence

AO 72A
(Rev.8/82)

in the record to demonstrate whether U-Haul had undertaken any efforts on its own to investigate whether the vehicle was stolen, abandoned, or reported as broken down.

Here, the situation is more complicated. There is no dispute that the address Plaintiff gave to Hertz in December 2004 was at most only valid for one month after he began renting cars from Hertz. In fact, as described above, the documentary evidence shows that Plaintiff had not lived at the Peachtree Corner address long before December 2004. Further, while Plaintiff appears to have given Hertz various cell phone numbers, Plaintiff testified that some of those phone numbers were pre-paid and would not be functioning if Plaintiff could not pay his bill.

Hertz did undertake efforts to locate Plaintiff. Hertz sent a certified letter to Plaintiff's last known address which was returned with no forwarding information for the reasons described above. Hertz sent out a repossession company to retrieve the car, but that effort also failed because Plaintiff had not given Hertz a current address. Hertz attempted to call the cell phone listed on the rental agreements and left messages but could not reach Plaintiff. Hertz also contacted Plaintiff's Visa debit card holder who would not provide additional information on Plaintiff's whereabouts. Finally, Hertz contacted the Atlanta Postal Credit Union in an attempt to locate Plaintiff. The credit union also would not provide any information on Plaintiff. In all, Hertz waited two months before bringing the matter to the attention of the police.

AO 72A
(Rev.8/82)

Hertz did provide a packet of information to the Gwinnett County Police Department. While that information did not include Plaintiff's employer, that information was not relevant to Detective Bridgefarmer's decision-making. Further, before seeking an arrest warrant for Plaintiff, Detective Bridgefarmer talked to Mr. Macena at the Beaver Ruin location and he informed the detective that he thought Plaintiff worked for the Post Office and that he had extended rentals of the car before. Detective Bridgefarmer then contacted the Post Office Inspector who informed him of Plaintiff's work location which had only changed three weeks before. There is no evidence in the record that Hertz could have acquired this information on its own without the benefit of information given to law enforcement officers. In fact, to the contrary, Hertz submitted an affidavit showing that the Post Office would not give out information about employees. *See* Affidavit of Karen Herman, Reply, Exh. D.

While Plaintiff has testified that Hertz had his work contact information, as the court described above, there is nothing on the written records of Exhibit 1 to show a work telephone contact number. Detective Bridgefarmer's affidavit relies on the statement of Ms. Simmon at the preliminary hearing and Ms. Simmon contradicts that testimony in her deposition. Further, Plaintiff did testify that Hertz employees from the Beaver Ruin location contacted him at his supervisor's number at the Webb Bridge Road post office. However, by May 20, 2005, Plaintiff no longer worked at the Webb Bridge location, but had instead

transferred to the post office on Old Milton Parkway in Alpharetta, Georgia. There is no evidence that Hertz employees ever contacted Plaintiff at that location. The only other number listed on rental documents is 770-441-4113, which Plaintiff testified belonged to Ms. Simmon. *See* Francis Depo., at 107.

It is true that when Hertz reported the car stolen, it sought rental fees from Plaintiff's debit card and did not inform the police that the company was charging Plaintiff's account. Again, the relevance of that information is not clear on a theft by deception charge. Hertz collected rental fees through August 3rd. Plaintiff was not arrested and the car was not recovered until August 28th. Hertz was entitled not only to its overdue rental fees, but also to the car itself.

Under these facts, the court finds that no reasonable jury could conclude that Hertz lacked probable cause that Plaintiff had stolen the rental car at the time Hertz went to the police. There is absolutely no evidence that the only reason Hertz had for initiating the proceedings against Plaintiff was a desire to injure him. Hertz made no false statements to the police and did not omit material information. For these reasons, the court GRANTS Defendant's motion for summary judgment as to Plaintiff's claim of malicious prosecution.

## III.    Conclusion

The court GRANTS Defendant's motion for summary judgment [30].

22

The Clerk of the Court is DIRECTED to DISMISS WITH PREJUDICE Plaintiff's complaint.

**IT IS SO ORDERED** this 2nd day of March 2010.


_____/s   J. Owen Forrester_____
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)